## F. M. McClure v. The State.

No. 8635. Delivered March 25, 1925.

Rehearing to reform opinion, denied May 13, 1925.

**1.—Murder—Evidence—Of Another Offense—Held, Not Competent.**

On the cross-examination of appellant, over his objection, the state inquired into his connection with an arson case against a man named Haas in the state of Ohio, and was asked if he had not gotten immunity in the arson case, for testifying against Haas. This testimony was not admissible for any purpose, and the error will necessitate a reversal of this cause.

**2.—Same—Above Subject Continued.**

Proof of mere accusations against or evidence of particular acts of misconduct, is not admissible to affect the credibility of a witness. Defendant, or any other witness can only be impeached as to other offenses by showing that he has been legally charged with a felony or with a misdemeanor imputing moral turpitude. Following McAfee v. State, 17 Tex. C. A. 139 and other cases cited.

**3.—Same—Above Subject Continued.**

The rule permitting the impeachment of a witness by showing that he has been charged in a legal manner with an offense, is an exception or departure from the general rule of evidence. This exception has never within our knowledge been extended to embrace a transaction where it is sought by evidence of certain conduct of the accused, to authorize the jury to infer that he was *subject* to a legal charge of an offense involving moral turpitude. Following Wright v. State, 63 Tex. C. R. 429 and numerous other cases cited.

**4.—Same—Charge of Court—Subject Continued.**

From what has been said, it follows that the trial court after erroneously admitting evidence of the arson matter, accentuated his error by his charge limiting such testimony for the purpose of enabling the jury to ascertain *whether or not defendant had been granted immunity from prosecution* for said offense, as effecting the credibility of the defendant as a witness in his own behalf.

**5.—Same—Argument of Counsel—Misdirecting the Evidence—Improper.**

Where evidence is admitted of other offenses against the defendant, to affect his credibility, as a witness, it is both unfair and improper for prosecuting attorney to discuss such testimony, and misdirect it to other conclusions and deductions which our laws do not sanction. In a recent case this court said "Prosecuting officers in their zeal should not so frame their argument as to induce a jury to appropriate for general purposes testimony which can properly be admitted for a limited purpose. See Jarrott v. State, 257 S. W. 257.

**6.—Same—Confessions—Leading to Discoveries—All Admissible.**

. Where a statement, or confession made by appellant while under arrest, leads to the discovery of evidence of his guilt, such as the finding of the secreted or stolen property, or the instrument with which he states the offense was committed. such statement or confession is admissible. but all of
100 Tex. Crim.—35.

the statement made by him at the same time, whether inculpatory, or exculpatory under our well established rules of evidence are, also admissible.

### 7.—Same—Charge of Court—On Circumstantial Evidence—Practice.

Where the appellant testified that both he and deceased, had hold of the pistol at the time it was discharged, resulting in her death, and that his struggle for possession of it, was to prevent her from killing herself, and that she was responsible for the pistol being fired, and the state sought to disprove his statements by physical facts, and other circumstances, it would have been proper to give a charge on circumstantial evidence. For the errors discussed the cause must be reversed.

#### ON REHEARING.

### 8.—Same—Confession—When Admissible.

While it is clearly established that a statement or confession of accused made while under arrest which leads to the discovery of evidence of his guilt, is admissible, a subsequent declaration, while under arrest, would not be admissible, unless there was something in that particular declaration which brought it within the exception to the confession statute.

This is the second appeal in this case. The former opinion of this court is in the 95 Tex. Cr. Rep. 53.

Appeal from the District Court of El Paso County. Tried below before the Hon. W. D. Howe, Judge.

Appeal from a conviction of murder; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*Lea, McGrady, Thomason & Edwards*, of El Paso, for appellant.

*Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is murder; punishment fixed at confinement in the penitentiary for life.

The evidence is not materially variant from that outlined in the report of the former appeal in 95 Texas Crim. Rep. 53, save that upon the present trial the appellant and the witness Don Macomber testified.

According to the appellant, he became acquainted with the deceased about eighteen months before her death which occurred in March, 1922. She was employed by him and represented herself as Miss Louise Frentzel, though some time later she told him that she was a married woman; that her husband's name was James Thomas. Appellant owned an automobile. His wife, whom he had married in January, 1922, was in Cleveland, Ohio, and he, on frequent occasions took the deceased riding in the car. She borrowed several sums of money from him and placed some liberty bonds in his

custody. The money was paid to him a short time before her death. Appellant was preparing to go to Baltimore, Maryland, to live and had secured a railroad ticket. He had given the deceased a small pistol and possessed another himself. On the evening on which the homicide occurred, they went riding together in the appellant's car. From the actions of the deceased, she was infatuated with the appellant, though no improper relations were sustained. Describing the tragedy, appellant said:

"After I stopped the car I put my arm around her and says, 'Louise, I am going away in the morning and came out here to tell you good-bye. I am going to Baltimore to meet Mrs. McClure there.' She flew up in a rage and said, 'No, you are not going; I won't let you go; I am going to kill myself.' She had the little gun in her hand and after a struggle I got the little gun away from her and threw it in the back of the car.

She was awful hysterical; she was mad; she was crazy. * * * I looked down and she had her hand in the pocket of the car door and was pulling the big gun out. * * * I finally got hold of the revolver and she said, 'I will kill you too.' I finally jerked it away from her over her shoulder. * * * I did not intentionally shoot her on the night of March thirteenth; it happened just as I said, while I was struggling with her for the gun."

CROSS-EXAMINATION:

"I have stated that at the time Louise Frentzel was killed I had hold of the pistol. I am not exactly sure what part I had hold of, I had hold of some part trying to pull it from her hand, I think I had hold of the back of the barrel, my hand was over her hand. At the time the shot was fired I was jerking the pistol away from her. Louise had hold of the pistol at the time the shot was fired, and my hand was over hers when I grabbed it.

Don Macomber testified in behalf of the State. According to his testimony, he was nineteen years of age. He knew nothing of the death of the deceased until he heard that her body was found. He knew that the automobile of the appellant was placed at his home on Monday night. According to the witness, he left his home and went to see the appellant. They went together to the appellant's car which was parked at a place which the witness described. The two then took the car to the home of the witness, backed it into the garage and closed the doors. The witness observed some blood upon the car that night, and on the following morning a cape and a pair of gloves belonging to the deceased and a small pistol were found in the car. The witness endeavored to wash the blood from the car.

On his cross-examination inquiry was made of the appellant concerning his connection with an arson case against one Haas in the State of Ohio. Objection was made and a bill of exceptions reversed Appellant was asked by State's counsel if he had not gotten immunity in the arson case for testifying against Haas. In reply he said that he was a witness for the State in that case but had not gotten immunity; that Haas was indicted and the trial took place in 1919; that the property insured belonged to Haas but was held by the appellant in trust and that for a like reason the policy of insurance was made payable to him; that no insurance was collated upon the building.

In qualifying the bill the learned trial judge adverts to the fact that the appellant had come to the Western country in November, 1918, and remained until January, 1922, and had not since he came West been in the State of Ohio, in which state, in 1916, he pled guilty of the offense of larceny of an automobile in two cases and was confined in the reformatory. We fail to discern either the relevancy or the cogency of the matters to which the learned trial judge refers. No connection is shown or intimated, so far as we have perceived from the evidence, between the larceny charges in 1916 and the arson trial in 1919. The fact that the appellant had been convicted of larceny was, under the well-defined rules of evidence, admissible under the facts of the present record for the sole purpose of affecting his credibility. If there had been a legal charge of arson against the appellant, proof of it might have been used against him for a like purpose, namely, to affect his credibility, but for no other purpose. The evidence adduced manifestly does not show that he was charged with arson in any legal procedure. The only evidence upon the subject is that of the appellant in which he categorically says that he was not charged with arson. The precedents in this State are specific and numerous supporting the proposition that:

"Proof of mere accusations against, or evidence of particular acts of misconduct, is not admissible to affect the credibility of a witness. Defendant or any other witness can only be impeached as to other offenses by showing that he has been legally charged with a felony or with a misdemeanor imputing moral turpitude."

See McAfee v. State, 17 Texas Crim. App. 139; Ware v. State, 36 Texas Crim. Rep. 599; Branch's Ann. Tex. P. C., Sec. 168; and numerous cases there collated.

The rule permitting the impeachment of a witness by showing that he has been charged in a legal manner with an offense is an exception or departure from the general rule of evidence. See Boon v. Weathered, 23 Tex. Rep. 675; Kennedy v. Upshaw, 66 Texas Rep. 442. The exception has never, within our knowledge, been extended to embrace a transaction such as that under consideration where it

is sought by evidence of certain conduct of the accused to authorize the jury to infer that the appellant was subject to a legal charge of an offense involving moral turpitude. The refusal of the court to so extend the rule is emphasized by cases in which it has been held that though one may have been charged by complaint with a felony or misdemeanor involving moral turpitude, that fact is not usable against him even for impeachment purposes where the grand jury, having an opportunity to do so, has failed to merge the complaint into an indictment. Wright v. State, 63 Texas Crim. Rep. 429; King v. State, 148 S. W. Rep. 325; Williamson v. State, 167 S. W. Rep. 362; Matthews v. State, 80 Texas Crim. Rep. 177; Sapp v. State, 80 Texas Crim. Rep. 370; Howard v. State, 80 Texas Crim. Rep. 591; Criner v. State, 89 Texas Crim. Rep. 228.

From what has been said it follows that in the opinion of this court, the learned trial judge fell into error in receiving the testimony touching immunity from the prosecution of arson which has been quoted above and to which timely and pertinent objections were addressed. Referring to the immunity matter, the court gave to the jury an instruction in paragraph 8 of its charge from which we quote:

" * * * You are instructed that the evidence introduced as to the alleged facts in connection with said offense of arson were submitted before you solely for the purpose of enabling you to ascertain, if they do so, *whether or not the defendant had been granted immunity from prosecution* for the said offense. And unless you believe from the evidence, beyond a reasonable doubt, that the facts introduced in evidence prove such immunity from prosecution for such offense, you will not consider the questions or answers pertaining thereto for any purpose whatever. If you do believe, beyond a reasonable doubt, that they show such immunity from prosecution was granted, then you are instructed that if you consider such matter at all, you can consider it only for the purpose of affecting the credibility of the defendant as a witness in his own behalf, if it does do so. and for no other purpose."

Touching the larceny charges, the court also instructed the jury that they are available to the State solely for the purpose of affecting the credibility of the appellant as a witness in his own behalf. Against the charge relating to immunity, a timely and appropriate objection was made which, in our judgment, should have been sustained. It authorized the finding by the jury that the appellant was granted immunity in a charge of arson without evidence to support such a finding. It singled out testimony which, in the opinion of this court, was improperly received, and authorized its use against the appellant as affecting his credibility as a witness in his behalf, upon which he relied almost entirely for an acquittal

or mitigation of the punishment. Unless charged with arson in. some legal manner the matter of immunity was not relevant.

In the argument of the case as revealed by the bill of exceptions, counsel for the State, in referring to these two matters, used language which we quote as follows:

"The evidence shows him to be shrewd, well versed in his line of business, owner of a fine car, a confessed thief, the man to whom the insurance policy in an arson case was made payable, and as we have him here today, a lady's man brought to judgment."

Also:

"A man that will steal a car, a man that would be the payee in an insurance policy in an arson case, a man that would frame up with Don Macomber to hide a car and swindle an insurance company wouldn't hesitate to send her into eternity if she blocked his plans."

It occurs to us that the use made of the testimony in question was entirely at variance from the purpose for which it was offered and admitted in evidence and that to which the court, in its charge, authorized the jury to apply it. We understand that the general rule of evidence excludes other crimes, but that in this State one of the exceptions is that which permits proof of a legal charge of felony or misdemeanor involving moral turpitude, for the purpose of affecting the credibility of the accused when he testifies as a witness in his own behalf. The reason for the general rule excluding such crimes, as we understand it, is that such proof brings into operation the not unnatural belief of the jury that a person who is guilty of one serious transgression of the law is likely to have committed another. See Underhill's Crim. Ev., 3rd Ed., Sec. 150.

In the present case, the evidence of larceny was properly admitted as bearing upon the appellant's credibility as a witness. In arguing that because he had stolen an automobile which resulted in his plea of guilty and conviction of larceny. he would have been likely to have taken the life of the deceased cannot be regarded as other than an effort to have the jury misappropriate the evidence in question. So with the inadmissible testimony on the subject of arson and immunity.

In a recent case, in dealing with a similar question this court had occasion to say:

"Prosecuting officers in their zeal should not so frame their argument as to induce a jury to appropriate for general purposes testimony which can be properly introduced only for a limited purpose." (Jarrott v. State, 257 S. W. Rep. 257.)

This is deemed a rule that is conducive of a fair trial which, under the beneficent provisions of our law, is to be accorded to all whose life and liberty are in jeopardy, and the ends of justice are met by bringing before the jury those matters of evidence which

are sanctioned by law, and making of them such use only as will lead to an orderly and just decision touching the guilt or innocence of the accused and the measure of his punishment of guilt.

We understand that Art. 810, C. C. P., forbids the introduction of a voluntary confession of the accused when not made in an examining court in accord with the law, or when not in writing and signed by the accused after due warning, *"unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."*

In the present case, as indicated on the former appeal, the declaration of the appellant which led to the finding of the automobile in which the deceased was killed and articles belonging to her was held admissible as coming within the exception embraced in the statute which has been quoted above. On the present trial, complaint is made of the testimony of the police officers to the effect that at the time the appellant gave the information which led to the discovery of the automobile in which the deceased was killed, he also made a statement that she killed herself while he was not in the automobile. In our opinion, this was a part of the confession, all of which became admissible by reason of its coming within the exception mentioned and quoted above. It is our understanding of this exception that it sanctions the admission in evidence of the *confession* in its *entirety* and not alone *that part* of it which leads to the discovery of the *instruments* used in the commission of the offense.

The court gave the jury an instruction to the effect that if the shot which killed the deceased was fired without the intent of the appellant to kill but was the result of an accident due to the scuffle over the pistol or if upon this subject there was a reasonable doubt, an acquittal should result. By exception to the charge and requested charge, the appellant sought to have the jury instructed upon the law of circumstantial evidence. The law is well established that if there be direct evidence in a murder case that the fatal shot was fired by the accused, a charge on circumstantial evidence is not required, though his intent in firing the shot be a controverted issue to be solved by an inference of the surrounding facts. See Russell v. State, 38 Texas Crim. Rep. 590; Branch's Ann. Tex. P. C., Sec. 1874.

In the present case, appellant contends that the direct evidence goes to show that the shot was not fired by him. In his description of the scuffle, he said that when the shot was fired both her hand and his were upon the pistol, and that all of his acts were pursuant to an intent to deprive her of the pistol so that she might not do violence to him or to herself.

The State, through several police officers, introduced in evidence the declaration of the appellant soon after the homicide to the effect *that before the deceased was killed, appellant had gotten out of the automobile and the shot was fired by her before he returned to it.* To combat both of these theories and to establish the contrary, namely, that the deceased was killed by the appellant, reliance is had upon the location of the wound and other physical facts incident to the homicide, his alleged contrary statements and other circumstances, including his conduct both antecedent to the homicide and following it.

We regard the question presented as not without difficulty. It may be that the presence of the appellant and his intimate relation with the homicide might bring the case within the rule of juxtaposition announced in Holt's case 9 Texas Crim. App. 582, and others. If the complaint of the alleged omission in the charge was the only fault in the procedure of which complaint is made, a reversal of the judgment might not be warranted. Inasmuch, however, as we feel constrained to order a reversal of the judgment upon other grounds, we believe that upon another trial the doubt touching the legal demand for a charge on circumstantial evidence should be resolved in favor of the accused.

Because of the receipt in evidence of the testimony concerning the trial of Haas for arson, the manner in which it was treated in the court's charge and the use made of that testimony and other collateral offenses in argument, all of which impinged the rights of the accused and were calculated to prejudice his case, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—Touching what was said in the original opinion concerning the application of Art. 810, C. C.P., to the declaration of the appellant to the effect that at the time the deceased was killed appellant was not in the automobile, we perceive nothing indicative of the opinion of this court that a subsequent declaration of the appellant while under arrest, made at another time and place, would be rendered admissible in evidence, unless there was something in that particular conversation which brought it within the exception to the confession statute which is quoted in the original opinion.

The statement in the original opinion is deemed sufficiently plain to limit the confession to that which was made at the time the appellant first disclosed the locality of the automobile in which the de-

ceased was killed and which disclosure resulted in the discovery of the automobile.

A review of the evidence upon the application for a change of venue is pretermitted for the reason that the reversal of the judgment is upon other grounds. Whether in refusing to change the venue the court was right or wrong has not been considered as we cannot foresee that the same conditions which prevailed at the time of the trial will exist when the case is called again.

With these comments the appellant's motion for rehearing is overruled.

*Overruled.*