JAMES L. MARSHALL V. THE STATE.

No. 10048.   Delivered April 14, 1926.

Rehearing denied June 25, 1926.

1.—Murder—Requested Charges—Covered by Main Charge—Properly Refused.

Where the issues presented in requested charges have been fully and clearly given to the jury in the court's main charges, there is no error in refusing such special charges.

2.—Same — Requested Charge — On Defendant's Confession — Properly Refused.

Where, on a trial for murder, the defendant having testified, and in

rebuttal of his testimony the state introduced his confession, there was no error in the refusal of the court to charge the jury that exculpatory statements in such confession would be considered as true, unless disproved by the state. Following Casey v. State, 54 Tex. Crim. Rep. 587, and other cases cited. Also see Branch's Ann. P. C., Sec. 73.

### 3.—Same—Evidence—Leading Questions—Rule Stated.

Where a witness for the state is interrogated by leading questions as to his testimony given prior to the trial, which were contradictory or not as clear as that given upon the trial, the objection to such examination on the ground that questions propounded are leading presents nothing for serious consideration.

### 4.—Same—Argument of Counsel—Improper, but Not Reversible.

Where state's counsel properly criticised witness introduced by the appellant it was improper in this connection for him to refer to appellant as a "cold-blooded murderer," but such argument in the light of the facts in this case would not constitute a reversible error. Following Price v. State, 220 S. W. 91; Boxley v. State, 273 S. W. 592.

### 5.—Same—Evidence—Conversation Between Third Parties—In Defendant's Presence—Admissible.

Where appellant complains of the admission of a conversation between deceased and the witness Milton with reference to damages done appellant's crops by deceased's cattle, and the qualifications of the court to appellant's bill shows that the appellant was present, and took part in said conversation, no error is shown.

### 6.—Same—Evidence—Properly Excluded.

Where appellant complains of the refusal of the court to permit him to prove by witness Tucker, the "pound man," how long he had been receiving complaints against the cattle of deceased, as qualified by the court, appellant's bill complaining of the matter presents no error.

### 7.—Same—Evidence—Comment of Court—No Error Shown.

Where the court, during the examination of a defense witness, remarked that he was the appellant's witness, such comment was harmless, and was not calculated to cause the jury to discredit the testimony of such witness. See Hill v. State, 262 S. W. 750.

### 8.—Same—Sentence Reformed.

The sentence in this case orders appellant to be confined in the penitentiary for 25 years. It is here amended that he be confined for not less than 5 nor more than 25 years, and as reformed the judgment is affirmed.

#### ON REHEARING.

### 9.—Same—Evidence—Leading Questions—Rule Stated.

Where appellant complains of leading questions being propounded by the state, his bill of exceptions complaining of the matter should clearly negative the many ¡well known exceptions to the rule which prohibits leading questions, and such facts and surroundings should be set out as to show

the harmful character of such questions, or no error is presented.  See opinion for a full discussion of the rule.

#### 10.—Same—Argument of Counsel—Rule Stated.

Where complaint is made of the argument of counsel, and it does not appear that the argument complained of is an expression of some fact dehors the record, or that it represents the personal opinion of counsel, or that it is mere personal abuse, the question becomes one largely referable to the facts before the trial court to say whether the facts justify the statement made, and unless injury is made clearly to appear, no reversible error is presented to this court.

#### 11.—Same—Bill of Exceptions—Indefinite—No Error Presented.

Where a bill of exception complains of the admission of testimony solely upon the ground that it is "prejudicial," such objection is too indefinite to bring the matter complained of before the court for review. Following Venn v. State, 210 S. W. 537; Manney v. State, 210 S. W. 961.

#### 12.—Same—Requested Charge—On Issue Not Raised—Properly Refused.

Where appellant on a trial for murder, testifying in his own behalf, expressly disclaimed that the killing was in the defense of his property, but that he shot and killed the deceased, believing his own life was in danger, there was no error in the refusal of his requested charge on the law of his right to defend his property.  Our decisions are uniform in so holding.

Appeal from the District Court of Wichita County.  Tried below before the Hon. H. R. Wilson, Judge.

Appeal from a conviction of murder, penalty twenty-five years in the penitentiary.

The opinion states the case.

*Davenport, Cummings & Crain* of Wichita Falls, for appellant.

*Martin, O'Neal & Allred* of Wichita Falls, *Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted in the District Court of Wichita County for the offense of murder, and his punishment assessed at twenty-five years in the penitentiary.

The record discloses that the appellant possessed and was cultivating a few acres in cotton just outside the city limits of Wichita Falls; that the deceased, J. E. Swayzee, was the owner of about fifty head of dairy cattle and was operating a dairy about a mile and a half from said cotton patch; that the cattle belonging to the deceased had been depredating upon said cot-

ton, and on the night preceding the killing, about 5 o'clock in the morning, the appellant had corralled quite a number of said cattle, some of which he had tied to trees and posts in the lot, and was there guarding same with a Winchester when deceased arrived and was killed inside of said corral or lot. It was the contention of the state that the appellant had prepared himself for the homicide by borrowing this Winchester from a neighbor, and was guarding said cattle with the intention of killing the deceased in the event he failed· to pay the damages. which appellant claimed the cattle had done to his cotton prior thereto, and that the deceased, having missed his cattle, had gone to said `corral early in the morning for the purpose of getting them, and upon entering said premises he was killed by appellant without cause or provocation and while he was unarmed. The appellant's contention was that the deceased entered the lot and began to untie the cattle, against his protest, and that when he requested deceased to desist, the latter pursued him with a knife, and that, believing his life to be in danger, he shot and killed the deceased. The court charged on murder, manslaughter, self-defense and defense of property.

The record contains fifteen bills of exceptions. Bills of exceptions 1, 2, 3, 8, 9, 10 and 11 complain of the refusal of the court to give to the jury appellant's special charges involving his right to impound said cattle and retain possession thereof against any forcible attempt made by the deceased to take possession of same, and his (appellant's) right to defend such possession to the extent of killing the deceased, in the event it became necessary. These bills, as presented, show no error. We think the court, in his general charge, sufficiently covered the law applicable to said matters complained of, and in a manner favorable to appellant, especially in view of the fact that appellant, while a witness in his own behalf, positively testified that he did not kill the deceased because the latter was attempting to take charge of the cattle against his consent, and would not have killed him on that account at all, but based his defense solely upon the theory, and so testified, that his only reason for killing deceased was that deceased was advancing upon him at the time with a knife in a threatening manner and that he killed deceased in order to protect himself against death or serious bodily injury at the hands of said deceased.

Bill No. 4 complains of the refusal of the court to give in

charge to the jury appellant's special charge to the effect that
the state, having introduced in evidence his confession which
was taken shortly after the homicide, would be bound thereby
unless said statements were shown to be untrue. The court
qualifies said bill as follows: "The state's case in chief was
made independent of the confession, such confession was used
by the state in rebuttal after the defendant had testified."
This bill, as presented, shows no error. It appears that upon
the trial the appellant contended, and so testified, that the
deceased, at the time of the homicide, was making an assault
upon him with a knife, and that the state thereafter introduced
in rebuttal of said testimony the aforesaid confession, wherein
the appellant stated that the deceased was making a demonstra-
tion as if to draw a gun when he shot him. It appears that
this evidence was only used in rebuttal of the defendant's own
testimony. This court, under similar circumstances, has held
that it is not error to refuse to charge on confessions. See
Branch's Ann. P. C., Sec. 73, for collation of authorities. See
also Casey v. State, 54 Tex. Crim. Rep. 587, 113 S. W. 534;
Cook v. State, 71 Tex. Crim. Rep. 532, 160 S. W. 465; Pickens
v. State, 86 Tex. Crim. Rep. 657, 218 S. W. 755; Simpson v.
State, 97 Tex. Crim. Rep. 57, 263 S. W. 273.

Bills 5 and 6 complain of the action of the court in permit-
ting the state to lead the witness Donohue and interrogate
him concerning a former statement made by him to the effect
that upon examining the premises where the homicide occurred
he had seen no tracks leading from the body of the deceased in
the direction where the appellant claimed to be standing at the
time of the shooting. These bills, as presented and qualified,
show no error.

Bill No. 7 complains of the argument of the District Attorney
to the jury wherein he stated, in effect, that appellant had put
certain witnesses on the stand for the purpose of detracting
the jury's attention from the main issue and in an attempt to
get the jury "to turn loose this cold-blooded murderer." We
are not prepared to say that this argument, considered in the
light of the record, is of such a nature as would authorize a
reversal of the case, or that the testimony of the state's wit-
nesses, if believed, was not a sufficient basis to warrant such a
conclusion on the part of the District Attorney. Price v.
State, 220 S. W. 91; Boxley v. State, 273 S. W. 592.

Bill No. 12 complains of the action of the court in permitting
the state to show by the witness Melton that in a conversation

with deceased, wherein the witness and deceased were settling the damages that deceased's cattle had done to witness' cane, the deceased stated that said claim was reasonable enough, and in that connection stated, "If Mr. Marshall would settle half as reasonable as I, we would make a settlement all right." Appellant contends that this testimony was prejudicial to his rights and was a transaction between the witness and deceased not connected with this trial. This bill, as presented, shows no error. The record discloses that the appellant was present and took part in said conversation, as shown by the qualification on said bill.

Complaint is made in bill No. 14 to the court's refusal to permit appellant to show by the witness Tucker, the "pound man," as to how long he had been receiving complaints against the Swayzee cattle, which testimony was excluded upon the ground urged by the state that the same was immaterial and irrelevant. Appellant contends that it was admissible for rebuttal purposes. This bill, as presented, and considered in the light of the court's qualification thereto, shows no error.

Bill No. 15 complains of the action of the court in stating, while the witness Donohue was on the stand, that he was the appellant's witness. It is contending that this remark on the part of the court was in effect a comment on the weight of the witness' testimony in the presence of the jury. We are unable to agree with this contention. Hill v. State, 262 S. W. 750.

The sentence in this case orders appellant to be confined in the penitentiary for twenty-five years. The same is here amended, and he is ordered to be confined therein not less than five nor more than twenty-five years.

After a careful examination of the entire record, we are of the opinion that the judgment of the trial court should be affirmed, and, as amended and reformed, it is accordingly so ordered.

*Affirmed.*

The foregoing opinion by the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant strongly urges that we erred in not upholding his contention appearing in bill of exceptions No. 6. In disposing of the preceding bill we inadvertently

coupled bill of exceptions No. 6 with No. 5 in the statement in our opinion that "as qualified bills of exception 5 and 6 show no error." Bill of exceptions No. 6 does not appear to have been qualified. Said bill sets out a page and a half of questions and answers propounded to a witness by the state's attorney and certified as being presented in the form above referred to because deemed necessary to a fair presentation of the proceedings. The objection made by appellant appears in the bill as follows: "To each of which questions the defendant objected through his counsel because the witness was a state witness, and that the questions were leading." Mr. Branch cites many cases on page 90 of his Annotated P. C. supporting the proposition that a bill of exceptions complaining of the asking of leading questions improperly will not be held reversible error unless there be a showing of prejudice thereby. Nothing in the instant bill shows the antecedents or the connecting facts surrounding the questions asked. What was said by the court in Carter v. State, 59 Texas Crim. Rep. 73, is so apt and applicable to the situation under discussion that we quote same as follows:

"There being so many exceptions to the rule which forbids asking leading questions, before we would feel authorized to reverse because the court below permitted leading questions, we would have to be satisfied from the bill that the leading question did not fall within any of the exceptions that authorized leading questions. *Questions that assume unproved facts are leading.* However, it is not a prejudicial error to permit leading questions where they relate to *acts not controverted,* or where the point sought to be established is already proven and in these questions the fact established may be recapitulated. See 8 Encyclopedia of Evidence, p. 153. Also leading questions may be put to hostile witnesses unwilling to give evidence. They are also permissible to refresh the memory of witnesses when the purpose of justice requires such a course to be taken. Also a leading question is permissible to arrive at facts when modesty or delicacy prevents a full answer to a general interrogatory. Also such questions are proper where the witness is confused or agitated. They are also permissible when they are asked of an ignorant person where he is slow to understand or his vocabulary is limited. They are also permissible to be put to children. They are also permissible and are not objectionable where the witness has given an ambiguous answer, and the party may inquire by leading questions as to any fact or circumstance tending to enable him to explain more clearly or certainly. Such questions are sometimes allowed for the purpose of bringing out details sur-

rounding a main fact already testified to. See Sec. 1105, Code of Criminal Procedure, and authorities there cited. Besides, this precise question was before us in the case of Snodgrass v. State, 36 Texas Cr. Rep. 207, and it was there held that the prosecutrix could be asked: 'Would you have yielded to the sexual embraces of defendant had it not been on account of his promise of marriage?' In view of the fact that discretion is left to the trial courts, in some cases, to permit the asking of leading questions, we think the proper rule of practice would be for the bill of exceptions, taken to the leading questions, to affirmatively show that the leading questions did not fall under one of the exceptions to the general rule. The bill in this case fails to state at what time of the proceedings this question was asked, under what circumstances it was asked, whether the witness' memory was bad or not, whether her recollection as to past events was treacherous, whether she gave her testimony in a halting manner, whether she was an unwilling witness, or whether the fact of her being a girl of twenty years of age and of modest demeanor caused her to be embarrassed upon the witness stand or not. Before we would be authorized to reverse a case upon this ground the bill should affirmatively exclude any idea that under the peculiar circumstances of the particular case, the court was justified in permitting the state to ask leading questions."

The only thing appearing in the instant bill in reference to the attitude of the witness or the circumstances suggesting that it was wrong for the court to permit questions in form as same appear in the bill, is found in the statement that the witness was "not an adverse, swift or unwilling witness." Mention of these three exceptions to the general rule forbidding leading questions in nowise includes all those instances in which same may be permitted under some one or more of the many other reasons which may justify the court's action. As said by us in Moore v. State, 37 Texas Crim. Rep. 565, speaking on this same point: "It does not appear that the discretion of the trial judge was abused, or that any injury resulted to the appellant." The burden being on the accused to show affirmatively in his bill that the learned trial judge was not justified in permitting such questions, and it plainly appearing that appellant has not discharged that burden, the bill shows no error. What we have just said applies in part to appellant's contention as set out in bill of exceptions No. 15. However, this bill also presents another question. Following an objection made by appellant's counsel that the state was seeking to impeach its own witness, the court said: "He is not his witness, he is your witness." Appellant urges that

this is in violation of Art. 707, 1925 C. C. P. (old Art. 787 C. C. P.), and cites Gribble v. State, 210 S. W. Rep. 215. The remark of the court there condemned was a direct comment on the lack of weight of certain testimony admitted, and was plainly violative of the statute which forbids the judge to "discuss or comment on the weight of the same or its bearing in the case, * * * nor shall he * * * make any remark calculated to convey to the jury his opinion of the case." In the language of this court in Wilson v. State, 17 Texas Crim. App. 535: "We do not understand the remark as a comment upon or disparagement of any evidence which defendant has introduced. If it could fairly and legitimately be so considered, then we would not hesitate to say that it was not only irregular, but highly improper and illegal." In the instant matter the statement of the court amounted to no more than the announcement of his ruling on the objection made. Appellant said he objected to the state asking certain questions of its own witness. The court ruled that the witness was not the state's witness but was appellant's witness, and stated his ruling in the language complained of. This was no comment on or discussion of the evidence, nor was it a remark calculated to convey to the jury the court's opinion of the case.

The state's attorney in his argument referred to appellant as "a cold-blooded murderer." Appellant excepted to this and asked the court to instruct the jury not to consider it, which request was refused. The attorney did not state the above as his private opinion. The language used by the attorney in Thomas v. State, 33 Texas. Crim. Rep. 607, was that the defendant murdered Farley while asleep and after brutally killing him, he robbed him, etc. Also the attorney said: "The defendant has committed a brutal murder." This court refused to reverse for this language. In the Boxley case, cited in our original opinion, the killing was referred to as "a cold-blooded assassination," which was held not reversible. It not appearing that the argument complained of is an expression of some facts dehors the record, or that it represents the personal opinion of counsel, or that it is mere personal abuse, the question usually becomes one largely referable to the facts before the court who hears the testimony and is in a position to know whether same justifies the statements made. Nothing in this bill of exceptions in any wise informs us that the facts failed to justify the conclusion that appellant was a cold-bloded murderer. By his refusal to give the requested instruction to disregard such argument, the learned

trial judge indicates his belief that such a statement reflected a fair inference from the facts.

George Melton swore on this trial that shortly before this homicide he had up some cattle of deceased's which had gotten into his field; that appellant and deceased came to his place, and appellant introduced deceased to witness, and that deceased asked witness what the damages were, and upon being told deceased said, "If Mr. Marshall would settle half as reasonable we would make a settlement all right." Melton also testified that Marshall was standing there when this conversation took place. The only objection to this testimony, as appears from the qualifications of the learned trial judge to bill of exceptions No. 12, is that it was "prejudicial." We have often held an exception of this kind too indefinite to bring the matters complained of before this court for review. Venn v. State, 210 S. W. Rep. 537; Mauney v. State, 210 S. W. Rep. 961.

Appellant renews his complaint at the refusal of a requested charge submitting the theory of a killing in defense of property, asserting that he had the cattle of deceased legally in his possession and that when he killed deceased the latter was in the act of unlawfully taking or attempting to take from appellant's possession said cattle. We have again reviewed the facts in the light of appellant's motion and are confirmed in what we said about this contention in the original opinion. Appellant expressly disclaimed that the killing was caused by any attempt to take the cattle on the part of deceased. He repeatedly affirmed that deceased, after cutting loose the cattle which were tied with ropes, made a threat and started toward him, appellant, that they both went up the bank together, or nearly so, and that when they got to the top of the bank he shot deceased, believing his own life was in danger. We need cite no authorities holding that it was not error to submit the law of an issue which is not raised by the testimony.

Believing the case was correctly disposed of upon original consideration, the motion for rehearing will be overruled.

*Overruled.*