ALFRED JACKSON v. THE STATE.

No. 14480. Delivered June 17, 1931.
Rehearing Denied October 21, 1931.

444

The opinion states the case.

*V. H. Archer* and *J. W. Marlow*, both of San Antonio, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

The parties involved are negroes. On the morning of the homicide appellant was moving away from Eliza Pinson's home where he had been rooming. After placing his effects in a Mexican's truck appellant went into the back yard where deceased was washing. We quote the testimony of a witness to the homicide as follows: "At that time she (deceased) had a sheet which was not open, and went to throw that sheet on the line and this Jackson man came around the corner of the house and didn't say a word to her, because I was standing there. He came out around the house and got in front of her and I saw something in his hand. He came on and went to shooting, and didn't say a word, and he had the ugliest look on his face I ever saw on a human. He fired three shots, at which time Eliza Pinson was not doing anything to him, but was washing and fixing to hang the sheet on the line. She never said a word to him. At that time Helen was with her mother and she screamed and asked him not to shoot any more. After Alfred Jackson got through shooting he walked around the house and that was the last I saw of him. When he shot Liza Pinson she screamed and fell back and hollered 'murder' and asked him not to shoot her any more."

The daughter of deceased gave substantially the same version of the transaction. The state's testimony was to the effect that appellant fled after he had fired the fatal shot. Several weeks thereafter he was apprehended.

Appellant testified, in substance, that deceased's son had been in the habit of having drinking parties at the house, which disturbed his (appel-

lant's) rest; that on one occasion he (appellant) had thrown a drunken man out of the house; that after this occurrence the inmates of the house had apparently become angry with him; that deceased's son threatened to kill him; that he decided to move away from the place in order to avoid trouble; that he bought a pistol for the purpose of protecting himself against the son of deceased; that on the morning of the homicide as he went around the house to the back yard he thought he saw deceased's son step off of the porch; that he drew his pistol for the purpose of protecting himself. At this point we quote appellant's testimony as follows:

"I think it was Phillip Pinson, (deceased's son) and when I came to the corner of the house where Mrs. Pinson and her daughter were, or rather, where they had a wash bench, here is the window (indicating), I walked from there and pulled the gun and got to the corner and Mrs. Pinson had the hose down there, which ran from the hydrant, and when I pulled that gun and had my hand on the trigger I stumbled over that hose and it made me make a jerk on the gun and it fired twice in succession, and Helen Pinson screamed, and I said, 'My God, I have shot that girl.' I turned and went immediately to the front steps and she went to Mrs. Williams and I walked on away. I remember seeing Mrs. Pinson just beyond the clothes-line, and I did not know at that time that any of these bullets struck Mrs. Pinson as I was under the impression I had shot the girl. After that I left town, but did not do so right away."

Phillip Pinson, testifying in rebuttal for the state, denied that he had ever had any trouble with appellant or that he had threatened him.

Bill of exception No. 1 recites that while counsel for the state was cross-examining appellant he said to him: "Wipe that sweat off of your face." Appellant objected and the court sustained the objection and instructed the jury not to consider the remark. The opinion is expressed that the bill fails to show error.

As reflected by bill of exception No. 2, after state's counsel objected to a question propounded to appellant, counsel for appellant stated that he was merely trying to get the truth out of appellant. State's counsel replied that it was impossible to get the truth from that "lying negro." Appellant's objection to the remark was promptly sustained and the court instructed the jury not to consider it for any purpose. The remark was improper. However, appellant's version of the transaction was not calculated to impress a reasonable mind with the view that he was telling the truth. The evidence of guilt was direct. The mere expression of the opinion by state's counsel that appellant was not telling the truth would not, in our opinion, warrant a reversal of the judgment.

As shown by bill of exception No. 4, state's counsel stated in his argument to the jury that appellant had "told one lie after the other on the witness stand." The court overruled appellant's objection to the argu-

ment, and declined to instruct the jury to disregard it. Without approving the choice of language by counsel, the opinion is expressed that counsel stated his conclusion drawn from the facts in evidence. The argument contained no statement violative of a statutory mandate. It must be weighed by the setting in which it occurred. Franklin v. State, 104 Texas Crim. Rep., 240, 283 S. W., 802. While it is true that counsel for the state should refrain from expressing opinions of guilt, the non-observance of this rule rarely ever calls for a reversal. We quote from Young v. State, 19 Texas App., 536, as follows: "While it is true that authors in treating upon this subject say that counsel either for or against the prisoner should never express their opinion as to the guilt or innocence of the accused, yet we would hesitate at this day to reverse a judgment because of a violation of this rule."

In Marinkovich v. State, 96 Texas Crim. Rep., 59, 255 S. W., 734, Judge Hawkins, speaking for the court, quoted the foregoing excerpt from Young v. State, supra, with approval. In Ball v. State (Texas Crim. App), 78 S. W., 508, counsel for the state, in referring to the appellant, said: "If ever there was a man who swore a lie on the witness stand this man Ball swore one." Further, counsel said: ".This defendant is as guilty a scoundrel and liar as was ever tried in a courthouse." In declining to reverse the judgment this court held that mere expressions of the belief on the part of the prosecuting attorney as to the guilt of accused would not warrant a reversal.

The remaining bill of exception recites that counsel for the state, in argument, referred to appellant as "a beast, a black murderer," and further said that appellant's soul was "as black as the hinges on the doors to hell." No special charge requesting the withdrawal of the argument was presented by appellant's counsel. His objection was overruled and the court declined to orally instruct the jury not to consider the remarks. In Frizzell v. State, 16 S. W., 751, in which a death penalty was assessed, the district attorney referred to the accused as "a tramp, a vagabond and a villian." Presiding Judge White, in holding that the remarks did not present reversible error, said: "We are of opinion that no injury is shown by this bill of exception. It is not shown that the remarks are such that under the circumstances they were calculated to illegally affect the defendant's rights." In Borders v. State, 72 Texas Crim. Rep., 135, 161 S. W., 483, in which a life penalty for murder was assessed, the prosecuting attorney pointed his finger at the accused and called him a "cold-blooded brute" and an animal. In overruling the contention that reversible error was presented, this court said: "While the prosecuting officer ought never to use epithets of any character, yet the killing, as shown by the evidence in this case, was done in rather a deliberate and brutal manner, and under such circumstances the language used would not present reversible error, and especially is this the case where no special

charge was requested in regard thereto." In Marshall v. State, 104 Texas Crim. Rep., 619, 286 S. W., 214, in which the accused received a penalty of twenty-five years for murder, the district attorney, in argument, referred to the accused as "a cold-blooded murderer." Objection was interposed and the court was requested to instruct the jury not to consider the remarks. The objection was overruled and the requested instruction refused. In declining to reverse the case this court, speaking through Judge Lattimore, said: "The attorney did not state the above as his private opinion. Language used by the attorney in Thomas v. State, 33 Texas Crim. Rep., 607, 28 S. W., 534, was that the defendant murdered Farley while asleep, and, after brutally killing him he robbed him, etc. Also the attorney said: 'The defendant has committed a brutal murder.' This court refused to reverse for this language. In the Boxley Case, 100 Texas Crim. Rep., 334, 273 S. W., 592, cited in our original opinion, the killing was referred to as 'a cold-blooded assassination,' which was held not reversible."

It was a fact that appellant was black. In referring to him as a murderer, the language used by the prosecuting attorney was no stronger than that used in Marshall v. State, supra. State's counsel used a mere figure of speech in referring to the soul of appellant as being "black as the hinges on the doors to hell." The reference to appellant as "a beast" was no stronger than the language used in Borders v. State, supra, wherein the accused was referred to as a "cold-blooded brute"; nor was it stronger than in Frizzell's Case, wherein the accused was called "a tramp, a vagabond and a villian." The action of the district attorney in using the remarks complained of is not approved; but the opinion is expressed that in the light of the evidence the remarks were not calculated to illegally affect appellant's rights. If the state's testimony was to be believed by the jury, appellant committed an atrocious crime. Having accepted the state's version of the transaction, it is not strange that the jury inflicted the extreme penalty. The conclusion is inescapable that the jury looked alone to the facts and circumstances in evidence in assessing the penalty. We deem it proper to quote the language of Judge Hawkins in Silver v. State, 110 Texas Crim. Rep., 512, 8 S. W. (2d) 144, as follows: "Another thing that must be borne in mind is that the facts and surroundings of the particular case should be looked to in determining the effect of an argument complained of. The same language under a certain state of facts might be highly prejudicial, and not so regarded under other circumstances. This is illustrated in Todd v. State, 93 Texas Crim. Rep., 553, 248 S. W., 695; Coats v. State, 98 Texas Crim. Rep., 314, 265 S. W., 891; Vineyard v. State, 96 Texas Crim. Rep., 401, 257 S. W., 548."

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant's attorneys again urge the same points relied upon for reversal in the original submission.

These young men deserve much credit for the splendid manner in which they have represented their client. That he has been condemned to suffer the extreme penalty of the law is in no way attributable to them, but is because of the facts in the case, for which they are in no wise responsible. The severe penalty inflicted has prompted a re-examination of the record. The authorities reviewed in the original opinion support the conclusion then expressed. Further investigation leads us to again say that in our judgment nothing which occurred during the trial of which complaint is made can reasonable be said to have contributed to appellant's conviction or the punishment assessed.

The fact that in the original opinion we said no request had been made for the withdrawal of certain arguments or remarks of the district attorney is not to be construed as a criticism of counsel representing appellant. If the things complained of were thought by us to have been seriously harmful their withdrawal from the jury, or a failure to ask that they be withdrawn would not affect the matter, they having been objected to at the time of their occurrence. Appellant is the victim of facts of his own making, and the consequences seem to have been deserved.

The motion for rehearing is overruled.

*Overruled.*