REBECCA DOSWELL V. STATE.

No. 26,069. November 12, 1952.
Rehearing Denied February 4, 1953.
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) April 15, 1953.

*Maury Hughes* and *William O. Braecklein,* Dallas, *Mallory Blair* and *Dan Moody,* Austin, for appellant.

*Henry Wade,* District Attorney, *Gene Bailey,* First Assistant District Attorney, *C. S. Potts,* Assistant District Attorney, Dallas, and *George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, life.

We shall attempt to summarize the 1244-page statement of facts herein.

Appellant and her husband had just driven up to their residential hotel in Dallas from a trip to Colorado. Appellant's husband met his death from the fire of a pistol as he alighted from their automobile, wherein appellant remained alone. Witnesses for the state testified that two shots were fired from the pistol. Witnesses for the appellant stated that they heard only one explosion. Only one bullet entered the body of deceased, killing him almost immediately. Only one bullet was found, and that was where the deceased fell; but a witness at the scene testified that he heard what he thought was a bullet pass through a three nearby and clip off a twig. The investigating officers did not know of this witness's testimony until some time after the homicide, and the bullet was never found.

The witness Simmonds testified that as the automobile

drove up to the hotel the deceased and the appellant were talking; that before the automobile came to a stop the deceased alighted therefrom while it was still in motion; and that as he did so two shots were fired, and deceased fell. They further stated that as the deceased fell he addressed the appellant as "you bitch." Mrs. Simmons testified that following the shooting the appellant got out of the car, adjusted her clothing and her hair, after which she began to scream and then started into the hotel, and that she did not go near the body of the deceased after he was shot.

After the homicide and prior to her arrest, the appellant presented herself at the office of the chief of the homicide bureau of the city police and gave her version of how the killing had occurred. She stated that, at her husband's command, she had reached into the glove compartment of their automobile for the purpose of transferring the pistol to her purse and that something therein, a wire or a wrench, caught the trigger and caused the pistol to start firing from within the glove compartment, and that she did not know how many times it had shot. The pistol recovered by the police had been fired twice.

Florence Wyatt testified that as a girl she had met the deceased, and that some years later, in 1948, their paths again crossed while she was working for a Mr. Duggan, and that during the summer of 1949 she became a part-time secretary for the deceased. Miss Wyatt testified that, following this period of time, she worked in Detroit, Michigan, from whence she returned to Texas approximately a month before the homicide and began immediately to work for the deceased. According to Miss Wyatt, shortly after her return and some 18 days before the homicide, the appellant came to the deceased's office in his absence and had a private interview with her, during the course of which appellant asked why she had returned to Dallas, wanted to know if deceased had ever talked to her over long distance while she was in Detroit, and notified the witness that, even though she considered her competent, her presence in the office was displeasing to appellant, at the same time telling the witness that she was generally considered to be a jealous wife. Miss Wyatt further testified that she resigned from employment with the deceased, because she was afraid of the appellant, who had threatened to kill her and deceased, and notified appellant of such resignation during the course of that interview. She further stated that following this interview she went to Colorado.

At the trial appellant gave a lengthy account of her life and her relationship with the deceased. She told how the deceased had misrepresented his financial worth to her prior to their marriage and how, with her financial backing, she being a wealthy woman at the time of their marriage, the deceased had been successful in the oil business.

She further testified that she did not remember denying to the grand jury that she had hired private detectives to watch her husband.

She also testified that she had bought the pistol on instructions from her husband and that as she reached into the glove compartment to get the gun "something happened and it exploded," causing her husband's death.

The witness Harper, an employee of the Burns Detective Agency, testified, on rebuttal, that the appellant came to his office nine days before the homicide and employed his agency to place the deceased, who at the time was in Washington, D. C., under surveillance in order to determine if he was seeing Florence Wyatt, whom she thought to be in Washington and, if not, to determine what girl he was seeing; at this time the appellant told the witness she did not want a divorce. Harper stated that on the following day he reported to appellant that the deceased had in fact spent the evening with a woman, whose identity was not known, had taken such woman home at the conclusion of the evening, and had spent some time at her hotel.

Harper testified further that the following week the appellant called him from Amarillo and alerted him to place the deceased under surveillance if he returned to Dallas and determine whether or not he met Florence Wyatt. The witness stated that following the homicide the appellant called him twice to determine if he had disclosed what he knew to the authorities; and when she learned that the district attorney had the Burns report, she asked the witness if he thought she should tell her lawyers about it.

The foreman of the grand jury testified that when the appellant appeared before the grand jury she denied having employed the Burns Detective Agency to watch her husband some short while prior to his death.

We find the evidence sufficient to support the conviction.

Bill of Exception No. 1 complains of argument of Assistant District Attorney MacNicoll, which appellant contends constituted unsworn statements of fact on a material issue.

The court qualified the bill by certifying that no objection was made thereto and that the first time the court knew the appellant was dissatisfied with said argument was when presented with appellant's motion for new trial.

In Gamble v. State, 151 Tex. Cr. R. 269, 207 S. W. 2d 86, we said:

"If the argument was made and if it was not based on the testimony in the case, objection should have been presented to the court at the time the argument was made, and proper instruction requested withdrawing it from the jury. It came too late in the motion for new trial."

In Brown v. State, 121 Tex. Cr. R. 528, 51 S. W. 2d 616, we said:

"Appellant insists that we were in error in holding that the arguments shown in his special charges were not erroneous and prejudicial. No objections to the remarks of the district attorney are brought forward in the bills of exception. This court has committed itself to the proposition that ordinarily objection to the argument must be made at the time it occurred in order that the attorney making the argument may, if he sees fit, withdraw or explain it. This rule has been applied in cases in which the death penalty has been assessed. Riles v. State (Tex. Cr. App.), 38 S. W. 2d 342. Supporting the rule, see Sears v. State, 106 Tex. Cr. R. 219, 291 S. W. 547, 548; Ross v. State (Tex. Cr. App.), 7 S. W. 2d 1078; Harris v. State, 93 Tex. Cr. R. 544, 249 S. W. 485."

As so qualified, the bill fails to reflect reversible error.

Bill of Exception No. 2 complains of the argument of the Assistant District Attorney Bailey as follows:

"You don't know her (the defendant's) theory of it; she didn't have nerve enough to tell you about it; she didn't want to tell you about it; if she had told you the truth, she would have told you, 'I murdered my husband; I despised him; he was going to get a divorce from me.'"

The bill fails to show that such argument was not in reply

to argument of appellant's counsel nor provoked or invited thereby. Such a bill is fatally defective. Baker v. State, 154 Tex. Cr. R. 116, 225 S. W. (2d) 828, and Baggett v. State, 154 Tex. Cr. R. 618, 229 S. W. 2d 801, and cases cited in Texas Digest, Crim. Law 1091(8)e.

Bill of exception No. 3 relates to the argument of the District Attorney Wade, which is reflected by the following:

"Mr. Wade: Gentlemen, that could not happen; that would never happen if this was an accident. Which of you would leave your wife or your baby, or anyone else and, then, never go and say one living word to them. As to her own confession, she said, she knew, he was injured and about to die or something was wrong with him; she didn't go within ten (10) feet of him, this woman who says, she loved him, this woman who says that he was the one that she is still in love with, this wicked murderess, this woman—

"Mr. Monroe: Just a second, if your Honor, please—'wicked murderess'—that's a name—just a minute—

"The Court: Just a minute; I sustain it unless you connect it with the evidence.

"Mr. MacNicoll: That's based upon the facts.

"Mr. Wade: I say, based upon the evidence and the facts in this case, she is a murderess but did she even give him a drink of water?"

In Marshall v. State, 104 Tex. Cr. R. 619, 286 S. W. 214, the state's attorney in his argument referred to appellant as "a cold blooded murderer." There, we said: "Nothing in this bill of exception in any wise informs us that the facts failed to justify the conclusion that the appellant was a cold blooded murderer." In that case, we observed that such argument did not constitute new evidence.

In Jackson v. State, 118 Tex. Cr. R. 443, 42 S. W. 2d 433, we had occasion to review the several holdings of this court concerning argument of this nature.

We do not find reversible error reflected by the bill.

Bill of Exception No. 4 complains of the failure of the trial court to give a charge on circumstantial evidence. We do not think the facts of this case required the giving of such a charge.

Bill of Exception No. 5 recites that Captain Hickman was

called as a firearms expert to prove by hypothetical questions that the pistol of the type that killed the deceased Tom Doswell could have been fired twice accidentally, and particularly to prove that if the gun was already cocked when the first shot was fired, the explosion could cause a reaction of the muscles through excitement, causing the second shot to be fired.

Some 42 pages later in the bill, after there had been a great deal of discussion between the counsel and the court, we find that the jury heard the following questions and answers:

"Q. All right. Now Captain, from your experience, observation, your study of people who have handled guns and from your knowledge and history and personal information that you have had or obtained, in reference to accident, is it quite possible that that (indicating) gun can be discharged accidentally? A. Yes, sir.

"Q. Basing it on the same experience, history and knowledge and information again, first hand or other study—other history and from any other reason pertaining to the use of firearms, is it possible for a gun of that (indicating) kind, whether it is cocked at the time or uncocked, to be shot in rapid succession from the use of your little pulling, accidentally? A. Yes, I would think so."

From this, we feel that the jury received practically the same testimony on the ultimate issue sought to be raised and which the bill complains appellant was denied. Without passing upon the question of whether the witness was qualified to testify as an expert on muscular reaction we further observe, in connection with this bill, that neither the appellant, nor any witness for her, testified that appellant's finger was on the trigger of the pistol at the time the same was fired, nor that the same was cocked. Neither did the appellant testify that she experienced any muscular reaction at the time the pistol was fired. She merely testified that she reached into the glove compartment and that she did not know what made the pistol fire and thought it fired only once.

Appellant was entitled to expert testimony on every defensive issue raised by the evidence to which expert testimony might be applicable, but she was not entitled to expert testimony upon a defense not before the jury.

Finding no reversible error, the judgment of the trial court is affirmed.

ON MOTION FOR REHEARING.

BELCHER, Judge.

Appellant again presents as error the arguments of the prosecuting attorneys in several instances, and further urges error based upon the arguments collectively. These contentions are set forth in an able brief and were pointedly and seriously presented on oral argument for rehearing.

We have re-examined each bill of exception relating thereto in the light of our prior decisions as to the requirements thereof and fail to find reversible error.

The appellant strenuously insists that this case is one of circumstantial evidence, and that the trial court erred in not responding to appellant's exception to its failure to so charge the jury.

In reviewing the statement of facts, we find that appellant testified on the trial of her case. Her testimony reveals that she was present at the time of the homicide; that the pistol with which the act of homicide was committed was in her right hand at the time it was discharged. The evidence discloses that the discharge of the pistol and infliction of the fatal wound were simultaneous. Appellant stated that she and the deceased were the only persons in or touching the car at the time of the shooting, and she further said that the pistol was accidentally discharged at the time deceased was shot.

The trial proceeded throughout without dispute that deceased died of the pistol wound.

The court adequately submitted to the jury the question of the accidental discharge of the pistol at the time and we find no objection to the giving of same in the record. The record does not reflect that the defense was made that deceased was shot with the pistol when it was discharged in appellant's hand.

The participation of the appellant in the discharge of the pistol is shown by her admission to persons who testified on the trial and her own testimony. The testimony of appellant shows that she was handling the pistol at the time of its discharge and that it was immediately within her possession.

In McClure v. State, 100 Tex. Cr. R. 545, 272 S.W. 157, 161 (7), Morrow, P.J., stated as follows:

"* * * The law is well established that, if there be direct evidence in a murder case that the fatal shot was fired by the accused, a charge on circumstantial evidence is not required, though his intent in firing the shot be a controverted issue to be solved by an inference of the surrounding facts."

Further, when a homicide is proved by direct evidence and all that remains to be found is the intent which accompanied the act, which may be determined from the circumstances surrounding the act, then a charge on circumstantial evidence is not necessary. Wesley v. State, 149 Tex. Cr. R. 650, 198 S. W. 2d 103, 105 (4-5); Branch's Ann. Tex. P. C., Sec. 1874, and cases there cited; Martinez v. State, 140 Tex. Cr. R. 159, 140 S.W. 2d 187, 189.

We think that the rule stated applies where the issue is whether the accused voluntarily fired the pistol, as well as to her intent in doing so.

There was direct evidence in the record to show the commission of the homicide by appellant, therefore a charge on circumstantial evidence was not required.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.

Opinion approved by the Court.