Willie McGILVERY, Appellant,

v.

The STATE of Texas, Appellee.

No. 50221.

Court of Criminal Appeals of Texas.

Feb. 18, 1976.

Michael Greenberg, Irving, for appellant.

Henry Wade, Dist. Atty., John H. Hagler and Gerald Banks, Asst. Dist. Attys., Dallas,

Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge. ·

This prosecution arose out of the rape, murder, and robbery of a seventy-nine year old woman who lived alone in her Dallas home. Appellant was convicted of murder and a jury assessed his punishment at confinement for life.

Three grounds of error are urged. They are: (1) Appellant's post-arrest in custody statements should not have been admitted; (2) the evidence was insufficient to support the verdict; and (3) the court erred in failing to charge the jury on the law of circumstantial evidence.

The offense occurred on September 19, 1973. In the afternoon of October 1, appellant and three companions, Carl Hall, Lydia Dilworth, and Brenda Adams, were stopped by police officers and arrested because they were riding in a stolen vehicle. Appellant at that time was wearing two rings that later were identified as the only property known to have been stolen from the deceased. He deposited one behind the back seat of the police car that transported him to jail. He divested himself of the other by kissing Dilworth as they parted in the jail, passing the ring from his mouth to hers in the process.

About 6:00 p. m. a police matron discovered the ring in the possession of Dilworth, who explained how the appellant had given it to her. Further investigation quickly revealed that it had been stolen from the deceased. The ring appellant had deposited in the police car was discovered and identified a few hours later.

At 4:30 a. m. on October 2, appellant and Hall were booked into the county jail and placed together in the "bull ring," a large common cell, for a few minutes before their removal to separate cells. At that time appellant allegedly made several statements to Carl Hall:[1]

"Q. [by prosecutor]: I will direct your attention to the last part of that [statement] and ask you to tell the Judge what the defendant, Willie McGilvery, said to you while you all were in the bull ring waiting to go up in the tank.

"A. [by Carl Hall]: Well, he said that he didn't know that the other dude was going to kill this lady.

"Q. What else did he tell you?

"A. That he had got the rings and the dude had got the money.

"Q. Tell you what he intended to do with the rings?

A. Have them broke down after he got out of jail.

"Q. Did he tell you anything about the ring that he had given to Lydia Dilworth?

"A. Yes. He said that he thought Lydia, you know, was sharp enough not to let the matron find the ring.

"Q. This is what the Defendant, McGilvery, told you up there in the bull ring the early morning hours of October the 2nd, 1973 before you all went to the tank, is that right?

"A. Yes."

Hall recounted these statements to Officer Walter Potts on the morning of October 3. Potts was surprised to hear appellant's comments about another "dude" because his theory of the murder upon the basis of the investigation to that point was that only one actor had been involved. Accordingly, the police laboratory was instructed to perform further research to attempt to verify that more than one actor was involved in

1. This was not custodial interrogation by an officer; therefore, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) warnings do not come into play. However, the record reflects that both Hall and the appellant were given *Miranda* warnings prior to the time of these statements.

the rape, murder, or robbery. On October 5, the lab tentatively verified that at least two men had raped the deceased. On October 11, Dr. Ruth Guy was able to confirm the fact on the basis of previously unperformed secretor analysis of the seminal fluid found within the deceased's vagina.

Article 38.22, V.A.C.C.P., upon which appellant grounds his attack upon the admissibility of the above statements, provides in part as follows:

"1. The oral or written confession of a defendant made while the defendant was in jail or other place of confinement or in the custody of an officer shall be admissible if:

" . . .

"(e) It be made orally and the defendant makes a statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."

■ The general rule is that oral confessions by defendants in police custody are not admissible at trial. *Smith v. State,* Tex.Cr.App., 514 S.W.2d 749, 752; *Pierson v. State,* 145 Tex.Cr.R. 388, 168 S.W.2d 256, 258–259. The above quoted statute provides an exception to the general rule. When a defendant's in-custody statement of facts or circumstances which conduce to establish his guilt is found to be true, the statute permits introduction of the statement at trial. The facts or circumstances stated must be shown to conduce to establish guilt by showing that the statement led to the discovery of items *or information* not previously discovered by the State, and must be incriminating. *Chase v. State,* Tex.Cr.App., 508 S.W.2d 605, cert. denied, 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1974); *Ashley v. State,* Tex.Cr.App., 362 S.W.2d 847, cert. denied, 372 U.S. 956, 83

S.Ct. 955, 10 L.Ed.2d 10 (1963); cf. *Smith v. State,* Tex.Cr.App., 514 S.W.2d 749.

■ The State in its brief properly concedes that none of appellant's statements about the rings render his oral confession admissible. By the time Hall talked to police officers and reported the statements on October 3, the police had already discovered both rings, knew that they had been stolen from the deceased, and knew that appellant had been in possession of both of them. The statements pertaining to the rings, therefore, led to no new evidence of guilt. *Smith v. State,* supra; *Easley v. State,* Tex.Cr.App., 493 S.W.2d 199.

■ The issue of admissibility turns up whether the statement "I didn't know the other dude was going to kill the lady" led to the discovery of items or information previously unknown to the State, and upon whether the facts found to be true[2] are incriminating.

The record is clear that the statement led the State to new information previously unknown to it. New laboratory tests were performed that showed a second man was involved in the crimes. Dr. Guy's secretor analysis did not reveal whether appellant had intercourse with the deceased, but did reveal that in any event another male, whether alone or in addition to appellant, had had sexual intercourse with her shortly before or at her death.

We also conclude that the facts found to be true were incriminating. While it is true that the test results did not prove whether appellant had intercourse with the deceased, and only established that someone else had, it nevertheless was an incriminating part of the State's theory that appellant was guilty as a principal in the crimes. In conjunction with the other evidence, which showed, inter alia, that his car was parked outside the deceased's house the day of the offense, that he himself was in the vicinity of the house the day of the offense,

2. Appellant does not contest the finding that the statement of facts or circumstances made by him was true.

and that pubic hairs not inconsistent with his were found on the deceased's body, it was established that appellant may have been guilty as a principal. The State argued the law of principals to the jury, the trial court submitted a charge on the law of principals, and the jury may well have found appellant guilty on that very theory. We find that the incriminating character has been demonstrated. This rendered the entire oral confession admissible at trial. *Hayes v. State,* Tex.Cr.App., 502 S.W.2d 158; *McClure v. State,* 100 Tex.Cr.R. 545, 272 S.W. 157.

■ Next, as to the sufficiency of the evidence, we are of the opinion that the evidence, most of which has already been recounted, was sufficient to support a conviction for murder. Appellant's car was seen parked outside the deceased's house the afternoon of the murder and the composition of foreign pubic hairs found on the body of the deceased was of the same composition as the hairs taken from appellant's genital area. On the day of the murder appellant used a credit card to buy gasoline at a service station a short distance from the scene of the murder. Appellant possessed the rings stolen during the murder. Finally, appellant's statements to Carl Hall were evidence of his guilt.

■ A written requested charge on circumstantial evidence appears in the record; however, there is no showing that such charge was ever brought to the attention of the trial court and the record does not reflect that any objection was made to the court's charge before it was read to the jury. Therefore, compliance with Arts. 36.-14, 36.15, V.A.C.C.P., has not been shown. Nothing is presented for review.

There being no reversible error, the judgment is affirmed.