### HERBERT S. VEEVERS V. STATE

No. 33,877.   January 24, 1962
Motion·for Rehearing Overruled March 7, 1962

*Jack W. Knight, W. E. Martin,* (on appeal only), Houston, for appellant.

*Frank Briscoe,* District Attorney, *Carl E. F. Dally, Lee P. Ward, Jr.,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

McDONALD, Judge.

The offense is abortion; the punishment, three years' confinement in the penitentiary.

The state's testimony is undisputed and is reflected by various witnesses.

Jo Ann Williams, the complaining witness, was a 19-year-old colored girl and a student at Jack Yates Senior High School. In July, 1960, not having menstruated since April, she went to see Dr. Phillips. Dr. Phillips said that he examined Jo Ann Williams at that time and that in his opinion she was pregnant. She testified that she made an appointment to see the appellant on the 3rd of August, 1960. At about 7:30 P.M. that evening, she went

to the apartment of the appellant at 5002 Chenevert Street. She was accompanied by two girls, Martha Marie Rubin and Joyce Marie Woodard. They were admitted to the house by a man by the name of Inman who told them to have a seat and wait for the appellant. After about half an hour, the appellant arrived and took Jo Ann and her friends into another room and placed the complaining witness upon a bed. He had her remove her underwear, and Jo Ann observed him with a little white pan, and she saw and felt him using different tools. The tools were placed in her vagina. The witness observed a plastic bottle fastened onto a long metal object which was placed inside of her. The appellant then had her replace her underwear and gave her some pink and gray capsules and some white pills. She then paid appellant $75.00 for his services.

Jo Ann Williams further testified that prior to August 3, 1960, she had felt life in the baby she was carrying in her womb. She said that the last time she felt life of the baby was when she left the office of the appellant. She related that while the appellant was working with her she "felt the quivering for about twenty minutes and then in the last part of the twenty minutes, a sort of tight knot came in my stomach and after that I didn't feel anything else."

Jo Ann attended school the next day, finished her classes at about 12:00 o'clock and went straight home. She started to have pains, cramping and became sort of "dizzy-like". The next day she was too ill to attend school and stayed home. That day she started having labor pains, and she testified that her "water broke" in a "gush". At this time, she called her sister for assistance, and a short time thereafter a small baby was born. She was then placed in bed awaiting an ambulance, which was called and later arrived and took her to the hospital. At the Hermann Hospital where she was taken, she was treated by Dr. H. B. Woodward.

Dr. Leon Phillips testified that he was a licensed physician and surgeon in Houston, Harris County, Texas, and stated that he had examined the complaining witness and that in his professional opinion she was over two months pregnant at the time he examined her on July 8, 1960.

Dr. Homer B. Woodward, Jr., testified that he was a medical doctor and a resident in obstetrics and gynecology at Hermann Hospital, and that he examined the complaining witness, Jo Ann

Williams, when she was admitted to the hospital. He testified that she came into the emergency room, having already passed the fetus, and that the afterbirth was still in her uterus. From his examination, he reached the conclusion that the fetus was about fourteen to sixteen weeks of age. He further testified that, based upon the examination and tests that were administered, it was obvious that the complaining witness had had a miscarriage and had an infected uterus. He further stated that the infection would be compatible with being caused by some foreign object being inserted into the uterus area. The doctor testified that he could not state exactly when the fetus expired. He further stated that he did not know of any reason why a catheter or a foreign body would be placed in the uterine cavity other than to produce an abortion.

Harold W. Rodgers, a police officer for the city of Houston, homicide division, in the company of policewoman Lanny Dixon went to Hermann Hospital on the 6th day of August, 1960, and as a result of their conversation with the complaining witness in this case went to 5002 Chenevert Street. They were admitted to the house upon the invitation of an attendant there, a Mr. Inman. Without objection, the officer testified that they searched the premises, where they found the instruments and utensils later introduced into evidence as State's Exhibit Nos. 2, 2A, 2B, 2C, 2D and 2E. The appellant's only objection to the introduction of these exhibits was that "there is no predicate laid to show that they have any relevancy or materiality or competence in connection with the alleged offense on August 3, 1960. Nothing at all to connect those up and no proper predicate laid." The officer further testified that they found a large amount of medical instruments and material. The photographs taken by the officers were also introduced into evidence, without objection. Appellant was present and upon the premises at the time the search was made and was placed under arrest at that time.

Policewoman Lanny Dixon testified to the search of the premises where appellant lived, without objection, and corroborated the testimony of Officer Harold W. Rodgers in almost every respect.

Gloria Coleman, a sister of the complaining witness, testified that she was living at the same address as the complaining witness and that during the period of time of July and August, 1960, up until the time the complaining witness's child was born, she appeared to be pregnant. On August 5, 1960, she was called into the bathroom by the complaining witness and stated that

she noticed the fetus protruding from the complaining witness. She related that she then called an ambulance which removed her sister to Hermann Hospital.

Martha Marie Rubin testified that on the 3rd day of August, 1960, she went to "Dr. Veevers'" home with the complaining witness and that they were accompanied by Joyce Marie Woodard, who is now residing in California. A short time after they were admitted to the house, the appellant arrived and took them into a bedroom. She said that he got some tools and a pan which were similar to those in State's Exhibits Nos. 2, 2A, 2B, 2C, 2D and 2E and brought them into the bedroom. She said that Jo Ann lay across the bed and after Jo Ann had taken off her panties he took the catheter and appeared to be "pushing some kind of a liquor up inside of her". She further testified that the appellant, after placing an instrument inside the complaining witness, appeared to be scraping around inside of her. After the appellant had performed his work, he asked for $75.00 in money and thereafter gave the complaining witness some small pills. This witness was at Jo Ann's house on the 5th of August and was present at the time the embryonic sac burst. She saw the body of a child protruding from the body of the complaining witness prior to the time she was taken to the hospital.

Appellant did not testify, offered no other testimony in his behalf, and rested with the State.

There is a statement of facts with this record containing the jury argument of counsel, which will be more fully discussed hereafter.

There is also a statement of facts containing a transcript of the testimony on hearing the motion for new trial. The testimony upon the hearing of motion for new trial shows that appellant's attorney requested the words "did then and there unlawfully, wilfully, and designedly" be inserted in the court's charge and that upon his request these words were added to the charge given by the court prior to the court reading the charge to the jury.

There are no formal bills of exception in the record, and the record contains no objections to the court's charge and no specially requested charges of the appellant, other than has already been mentioned in the preceding paragraph. The charge of the trial court adequately protected the rights of the appellant,

and out of an abundance of caution included a charge on circumstantial evidence.

Appellant contends that the evidence is insufficient to sustain the allegation "there by the use of said means produce an abortion of the said woman and did then and thereby destroy the life of the fetus in the womb of the said woman." He further contends that no evidence was adduced showing that the life of the fetus in the womb was destroyed. It is his contention that in the case at bar, at most, the State made out a case of bringing on a premature birth. He relies upon Tonnahill v. State, 84 Texas Cr. Rep. 517, 208 S.W. 516. We agree that Tonnahill is controlling for the facts as stated in that case. However, in the case at bar, the facts are different. We find the evidence sufficient, as adduced by the State from the complaining witness, Jo Ann Williams, as heretofore stated by us, to overcome appellant's contention. The contention is overruled.

The evidence is amply sufficient to support the verdict of the jury. Parnell v. State 166 Texas Cr. Rep. 239, 312 S.W. 2d 506, and Housman v. State, 155 Texas Cr. Rep. 49, 230 S.W. 2d 541.

Appellant first contends that the indictment in this case is fatally defective in that it does not allege that the appellant "unlawfully", "willfully", and "designedly" performed the abortion in question, and therefore fails to meet the requirements of Article 1191, V.A.P.C.

In the case of Cortez v. State, 161 Texas Cr. Rep. 77, 275 S.W. 2d 123, this Court has indicated, speaking through Judge Morrison, that it is unnecessary that the allegations complained of need be made. The language used in that opinion is as follows:

"The indictment alleged that the appellant did 'designedly thrust and force into the vagina * * *.' Appellant contends that it is defective because it did not allege 'unlawfully, wilfully and designedly'. We find further in the indictment the allegation that the appellant 'did then and there by the use of said means unlawfuly, wilfully and designedly produce an abortion' upon the prosecutrix. This, we think, is sufficient if in fact such allegations are necessary."

Article 1191, V.A.P.C., under which the present prosecution was brought, reads as follows:

"If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor more than five years; if it be done without her consent, the punishment shall be doubled. By 'abortion' is meant that the life of the fetus or embryo shall be destroyed in the woman's womb or that premature birth thereof be caused."

Omitting the formal parts, the indictment alleges that the appellant

"On or about the 3rd day of August, A.D. 1960, in said county and state, did, with the consent of Jo Ann Williams, a pregnant woman, introduce and insert a catheter into the vagina and womb of said Jo Ann Williams, then and there *calculated* to produce an abortion, and did then and there by the use of said means produce an abortion of the said woman, and did then and there thereby destroy the life of the fetus in the womb of the said woman."

The statute sets out two methods of accomplishing the offense of abortion: (1) If any person shall *designedly* administer to a pregnant woman or *knowingly* procure to be administered with her consent any drug or medicine and thereby procure an abortion, or (2) If any person shall use towards her (a pregnant woman) any violence or means whatever externally or internally applied and thereby procure an abortion.

While the word "designedly" seems to apply only when the offense is committed by the administration of drugs or medicines, it would appear to be necessary to allege that it was done "knowingly" or "designedly" to support an indictment under this phase of the statute. Where the offense is charged by alleging other means, as in the present case, it is not necessary to allege that the act was done "designedly" or "knowingly" where, as here, the indictment alleged *"calculated"* to produce an abortion. The means alleged in the indictment was the insertion of a catheter into the vagina and womb "then and there *calculated* to produce an abortion". We think "calculated" means planned or expected. "Designedly", as used in the statute, is of similar import. It is defined to mean intended or purposed. Either is sufficient to charge the criminal intent to produce an abortion. The indictment as drawn is sufficient.

It is unnecessary for the State to allege that the act was "unlawfully" done. The rule has been stated as follows:

"Nor need the State aver in expressed terms that the act charged was 'unlawfully' done where the facts alleged clearly show it to be unlawful." 23 Texas Jur. 632, 33, Indictment and Information, Section 32.

The rule is supported in Texas Jurisprudence with the citation of cases, including the following: Tucker v. State, 65 Texas Cr. Rep. 627, 145 S.W. 611; Boyd v. State, 106 Texas Cr. Rep. 492, 292 S.W. 1112; Morris v. State, 102 Texas Cr. Rep. 578, 279 S.W. 273; Ross v. State, 102 Texas Cr. Rep. 364, 277 S.W. 667, and many others.

In Ross v. State, supra, it was said:

"By a motion to quash appellant assailed the indictment, because it omitted the charge that appellant 'unlawfully' possessed the intoxicating liquor for the purpose of sale. We think the indictment not vulnerable to the attack. It charged the existence of facts which, if sustained, show a violation of the law. The failure to insert the word 'unlawfully' in the charging part of the indictment does not vitiate it."

The Supreme Court of Missouri in the case of State v. Williams, 296 S.W. 155, held that:

"Appellant also contends that the information is defective because it does not charge that the act complained of was prohibited or unlawful. The Constitution (Article VI, Section 38) provides that an indictment shall conclude with the words 'against the peace and dignity of the State'. This information concludes with those words. It was not necessary for the information to say that the acts of defendant were contrary to the statute, when the facts alleged of themselves showed that they were contrary to the statute."

Appellant argues that it is necessary to allege that the abortion was unlawful, because under some circumstances an abortion may be legally performed. Article 1196, V.A.P.C., provides:

"Nothing in this chapter applies to an abortion procured or attempted by medical advice for the purpose of saving the life of the mother."

This is a separate statute, and it need not be negated in the allegations of the indictment. It would be an affirmative defense available in the proper case to an accused. Therefore, appellant's argument is defeated.

These words were placed in the charge defining the offense, and appellant may not therefore complain of the court's action in that regard.

Appellant in this case did not file a motion to quash the indictment for any reason. The words "designedly", "wilfully", and "unlawfully" are not essential in charging the offense in this case under Article 1191, V.A.P.C., and the indictment here is not fundamentally defective. No reversible error is shown.

Appellant's contention is overruled.

Appellant next contends that the opening argument of the prosecutor presents reversible error.

In opening argument, the prosecutor argued as follows:

"It is a case in which a female, whether wed or unwed, consenting to the act of an abortion, and for the filthy, measly price of $75.00 in money, in effect, squelch out, kill and murder some unborn child * * *

"MR. KNIGHT: Just one minute, may it please the Court. We object to the use of the word 'murder' and we * * *

"THE COURT: That is sustained; the jury won't consider it for any purpose whatsoever.

"MR. KNIGHT: We move for a mistrial on the base of the inflammatory, prejudicial use of the word 'murder' in counsel's argument.

"THE COURT: That is overruled, counsel.

"MR. KNIGHT: Note our exception, please.

"THE COURT: Yes, sir."

In the case of Jarquin v. State, 155 Texas Cr. Rep. 140, 232 S.W. 2d 736, an abortion case, this Court held that where the district attorney, in referring to metallic instruments found at

the scene of the offense as "death-dealing instruments", was not reversible error where the court immediately instructed the jury to disregard such statement.

In the case of Garcia v. State, 162 Texas Cr. Rep. 594, 288 S.W. 2d 513, this Court held that where the prosecutor argued in the murder prosecution that the jury would be shocked if it had seen a man murdered in cold blood did not call for reversal of the conviction where the court sustained the objection to the use of the word "murder" and the motion for mistrial had been overruled.

The argument of the prosecutor in this case was merely that the life of the fetus had been destroyed. Under the indictment and all the proof offered, we think such argument may well have been a proper comment upon the evidence. It certainly does not appear that the argument of State's counsel was so material in character that, considering the evidence and circumstances and the immediate instruction of the court to the jury to disregard such argument, the rights of the appellant were so injuriously affected and the argument was so harmful as to cause this Court to hold that it was reversible error. This Court has held on many occasions that where counsel makes remarks that were improper, and the court immediately instructs the jury to disregard such remarks, the error is usually cured and reversal seldom results. 1 Branch's Ann. P.C. 403, Sec. 382.

Numerous informal bills of exception were reserved in the trial of the case. Those of similar nature will be grouped together and briefly discussed.

Dr. Phillips, a medical doctor, was asked to describe a catheter and asked whether or not such an instrument could be used in a manner calculated to cause an abortion. This was not error. See Housman v. State, 155 Texas Cr. Rep. 49, 230 S.W. 2d 541, 545.

Dr. Woodward, a medical doctor, was asked a number of hypothetical questions to which the objection was made that a proper predicate had not been laid, and that the doctor's answer would be an invasion of the province of the jury. These objections were properly overruled. The predicate, if not fully laid at that time, was supplied by later testimony. The answer to such questions did not invade the province of the jury. Housman v. State, supra; Jarquin v. State, supra; and 2 McCormick & Ray, Texas Law of Evidence 219, Sec. 1395.

Several objections were made, apparently on the basis that they assumed facts not yet in issue. These facts were supplied by testimony later in the trial, if not in evidence at the time the objection was made, and therefore show no error.

Objections were made regarding the testimony concerning certain medicine and drugs given to the complaining witness. Appellant gave the complaining witness the drugs at the same time that he performed the operation with instruments and, as such, it was res gestae of the offense charged. It was also admissible to show the intent of appellant to perform the abortion. See Moore v. State, 37 Texas Cr. Rep. 552, 40 S.W. 287.

Finding no reversible error, the judgment is affirmed.