**C. W. THOMPSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 44071.

Court of Criminal Appeals of Texas.

Nov. 2, 1971.

Rehearing Denied Dec. 21, 1971.

Judgment Vacated Feb. 26, 1973.
See 93 S.Ct. 1411.

Stuart Kinard, Houston (On Appeal Only), Fred Heacock, Houston, of counsel, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Frank Price, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

This appeal is from a conviction for abortion. The punishment was assessed by the jury at two years.

The sufficiency of the evidence to support the conviction is challenged.

The record reflects that C. W. Thompson, the appellant, was a licensed physician. On or about January 19, 1968, Ruby Lee Olin Rohne, the victim and prosecutrix, saw her physician, Dr. James A. Bloys, because her period was late and she was having a pain in the left lower part of her abdomen. Ruby Lee was then unmarried, had three children, and said she could not afford another child. Dr. Bloys gave her a pelvic examination and found some tenderness when the uterus was moved. He prescribed antibiotics to cover the possibility of pelvic infection. He also gave her produestron as an early pregnancy test and to start her period if she was not pregnant. She again saw Dr. Bloys on February 2, 1968. He then gave her a gravindex test for pregnancy, and the result indicated pregnancy.

According to the testimony of appellant's expert witness, Dr. Blanchard Hollins, a specialist in obstetrics and gynecology, the gravindex test is 94 to 97 percent accurate. Both Dr. Bloys and Dr. Hollins testified that only three pregnancy tests are conclusive: detection of fetal heartbeat, actual demonstration of fetal skeleton, and feeling the fetal movement. None of these can be detected before 16 weeks after conception according to Dr. Hollins' testimony. Ruby Lee was approximately eight weeks pregnant when Dr. Bloys gave her the gravindex test. Dr. Bloys indicated a fourth conclusive test of pregnancy which is recovery of a portion of the fetus following an abortion.

Three or four days prior to February 8, 1968, Travis Wall, the acknowledged father of the child and already married to another, called Dr. Thompson, the appellant, and told him he had a "young lady with a

problem." He neither told Dr. Thompson that Ruby Lee was pregnant nor that she wanted an abortion but Wall "took it that he understood what I was talking about." On February 8, 1968, Wall took Ruby Lee to see the appellant at his office on Dowling Street in Houston for the purpose of obtaining an abortion. Ruby Lee stated that the appellant asked her how long she had been pregnant, and she told him nine or ten weeks. She also related to him her desire to have an abortion. The appellant then left the room. A nurse took Ruby Lee into an examining room, told her to undress and covered her with a sheet when she lay on the table. The nurse then handed Ruby Lee a black object like a mask and told her to put it over her face and take deep breaths. The nurse told her that the doctor would be in shortly. The next thing she remembered was the nurse leading her back into the appellant's office some 45 minutes later. The appellant told Wall that Ruby Lee would be all right but if she had any problems to call him. No medication was prescribed. Wall paid the appellant $200.-00 cash for the operation.

On February 10, 1968, Ruby Lee called Dr. Bloys at his home telling him about the abortion on Thursday (February 8) and that she was now having pain in the lower abdomen and bleeding. Dr. Bloys ordered pain medication for her and advised her to come to his office for further examination. Ruby Lee went to see Dr. Bloys on February 14, 1968. He gave her a pelvic examination and found her uterus enlarged and grossly tender and she was having a foul-smelling discharge from the mouth of the uterus. It was Dr. Bloys' opinion that some instrument had been used inside the vagina and uterus to cause an abortion which subsequently caused the infection. After unsuccessfully trying to control the infection with antibiotics, Dr. Bloys had her hospitalized on February 19 for approximately two weeks. While in the hospital a scraping was done on Ruby Lee and Dr. Bloys testified that the pathologist's report indicated recovery of fragments of an embryo.

The appellant testified that he had never seen Ruby Lee prior to trial, had never performed an abortion on her or any one else, and was not even present in his office on February 8, 1968. His alibi was corroborated by his wife, his secretary and his nurse. Others testified regarding the whereabouts of the appellant at different times on the day in question.

We will discuss the evidentiary questions first, then those related to constitutional issues.

In his fourth ground of error appellant contends that the evidence was insufficient to show that he ever treated Ruby Lee for anything at all since Travis Wall was an accomplice witness as a matter of law and other corroborating evidence does not tend "to connect the accused with the commission of the offense."

Travis Wall, the State's witness, testified on direct examination that he arranged for and took the victim to the appellant's office for an abortion.

It is the State's case that the appellant then performed this abortion. Wall could be a principal in the State's case, Hammett v. State, 84 Tex.Cr.R. 635, 209 S.W. 661, and is, therefore, an accomplice witness as a matter of law, Silba v. State, 161 Tex.Cr.R. 135, 275 S.W.2d 108. As an accomplice witness his testimony must be corroborated by other evidence tending to connect the appellant with the offense committed. Article 38.14, Vernon's Ann. C.C.P. To warrant a conviction the accomplice may be corroborated by circumstances as well as by direct evidence. Cawley v. State, 166 Tex.Cr.R. 37, 310 S.W. 2d 340, cert. denied 361 U.S. 920, 80 S.Ct. 266, 4 L.Ed.2d 188 (1958). Ruby Lee was not an accomplice witness although she consented to procuring of the abortion. Bristow v. State, Tex.Cr.App., 128 S.W.2d 818. In addition to the testimony of the victim, the appellant testified that he was the only doctor practicing in that office since 1965. Ruby Lee gave no direct testimony that the appellant was the one who

performed the operation since she was asleep. We find Ruby Lee's testimony to be sufficient to corroborate that of Wall and connect the appellant with the offense. See Cherb v. State, Tex.Cr.App., 472 S.W. 2d 273.

■ Failure to instruct on the law of accomplice witness, especially where no charge was requested, is not reversible error where the evidence clearly warrants conviction independent of the accomplice's testimony. See Allen v. State, Tex.Cr.App., 461 S.W. 2d 622; Gonzales v. State, Tex.Cr.App., 441 S.W.2d 539; Haines v. State, 134 Tex. Cr.R. 524, 116 S.W.2d 399.

■ In his fifth ground of error appellant contends that the evidence was insufficient to prove that at the time Ruby Lee was carrying in her uterus a living embryo or fetus. It is necessary for the State to prove that the child was alive at the time of the alleged abortion. Tonnahill v. State, 84 Tex.Cr.R. 517, 208 S.W. 516. Dr. Bloys and Ruby Lee both testified that she was pregnant and in good health except for abdominal pain on February 2, 1968. Where a pregnancy is present the fetus is presumed to live and progress absent the showing of any intervening cause. Parnell v. State, 166 Tex.Cr.R. 239, 312 S.W.2d 506; Jordan v. State, 130 Tex. Cr.R. 182, 92 S.W.2d 1024.

■ We hold that the evidence was sufficient to support the jury verdict in that a pregnancy existed at the time of the alleged abortion, Jordan v. State, supra, and no intervening cause was shown.

In his sixth and seventh grounds of error the appellant contends the evidence was insufficient to show that appellant did anything or that an instrument was induced and inserted into the vagina and womb of Ruby Lee.

■ No direct evidence exists that any instrument was inserted into the vagina and womb of Ruby Lee since no one but appellant was in the room with her when

the alleged abortion took place and she was unconscious. Dr. Bloys testified that his examination of Ruby Lee indicated that some instrument had been placed in her uterus and vagina causing the abortion. Dr. Hollins testified that this diagnosis could be erroneous. The evidence was, however, sufficient to support the jury's verdict that an instrument had been inserted by the appellant.

In his eighth ground of error the appellant contends that the conclusion that he did in fact produce an abortion and destroy the life of the fetus is insufficient as a presumption upon a presumption.

■ Here the evidence was sufficient to conclude that Ruby Lee was pregnant. It is presumed that since no intervening cause was shown, the fetus was living. The evidence was sufficient to support the jury's finding that an instrument was inserted into Ruby Lee's vagina and womb. The evidence was sufficient to link the appellant with the commission of the act of abortion. That the appellant produced the abortion and destroyed the life of the fetus is not a presumption built upon a presumption but was a reasonable conclusion of the jury based upon the evidence.

We find appellant's grounds of error four through eight on the sufficiency of the evidence to be without merit.

■ Appellant's ninth ground of error contends he received ineffective assistance of counsel at trial. Courts are reticent to reverse a case based on the ineffectiveness of counsel but where it appears from the entire record that the accused has not been adequately represented, they shall not hesitate to do so. Vessels v. State, Tex.Cr.App., 432 S.W.2d 108; Rodriguez v. State, 170 Tex.Cr.R. 295, 340 S.W.2d 61. We interpret counsel to mean not errorless counsel and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance. Newton v. State, Tex.Cr.App., 456 S.W.2d 939.

This Court has before it only what appears in the record of the trial. Appellant was indicted on March 25, 1968. On May 28, 1968, appellant by his trial attorney filed an application to take depositions. His plea of not guilty was entered on May 19, 1969, almost a year after the record indicates that appellant had obtained counsel. Appellant's trial counsel concentrated exclusively on an alibi defense. Appellant complains that trial counsel failed to request a charge to the jury on corroboration of the accomplice witness Wall's testimony and that he did not request a charge on circumstantial evidence. Appellant also contends that trial counsel failed to object to the admission of certain evidence, and to some of the remarks of the prosecutor. Objections could have been made and, perhaps, some would have been sustained by the court.

Seasoned counsel will frequently not request charges or fail to object as matters of strategy especially where the defense is alibi. We do not know what trial counsel's reasons were and we will not indulge in second guessing. Prince v. State, Tex.Cr. App., 461 S.W.2d 413.

The record as a whole indicates a diligent effort by competent defense counsel. The trial could not be classified as a farce or mockery of justice which was shocking to the conscience of the Court, or one where the purported representation was only perfunctory, in bad faith, sham, pretense, or without adequate opportunity for conference and presentation. See Loper v. Beto, 440 F.2d 934 (5th Cir. 1971); Foster v. Beto, 412 F.2d 892 (5th Cir. 1969); MacKenna v. Ellis, 280 F.2d 592 (5th Cir. 1960). We conclude that appellant's ninth ground of error is without merit.

Appellant, in his first ground of error, contends that Article 1196, V.A.P.C., is unconstitutionally vague in providing an exemption for those procuring or attempting an abortion by medical advice for the purpose of saving the life of the mother.

In his second and third grounds of error he contends that the Texas laws prohibiting abortion are constitutionally overbroad since they absolutely prohibit the exercise of constitutionally protected rights without a balancing of the interests involved.

Counsel for appellant have filed an exhaustive and well written brief attacking the constitutionality of our statutes and asserting the right to privacy of the mother and contending he has standing to claim that right.

Article 1191, V.A.P.C., defines and outlaws all abortions. Article 1192, V.A.P.C., makes one who furnishes the means an accomplice. Article 1193, V.A.P.C., proscribes an attempted abortion. Article 1194, V.A.P.C., makes an abortion resulting in the death of the mother murder. Article 1195, V.A.P.C., makes it an offense to destroy the life of an unborn child during parturition which would otherwise have been born alive. Article 1196, V.A. P.C., provides: "Nothing in this chapter applies to an abortion procured or attempted by medical advice for the purpose of saving the life of the mother."

Appellant contends that the constitutionally protected right in issue is the right of a pregnant woman to seek an abortion as a part of the right of privacy in the marital relationship which relationship has been extolled by the Supreme Court of the United States as having a basic position in this society's hierarchy of values and has on more than one occasion recognized that "marriage involves interests of basic importance in our society." Boddie v. Connecticut, 401 U.S. 371, 376, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971). He further notes that the Supreme Court has recognized as constitutionally protected rights the right to marry, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), the right to procreate, Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), the right to limit the size of families, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and the right to rear families in

any number of acceptable ways, Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Most of these were mentioned in a dissenting opinion by Mr. Justice Douglas in United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971), which will be discussed later.

That part of Griswold v. Connecticut, supra, is also relied upon where the Supreme Court stated:

"Would we allow the police to search the sacred precincts of marital bedrooms for telltale signs of the use of contraceptives? The very idea is repulsive to the notions of privacy surrounding the marriage relationship.

"We deal with the right of privacy older than the Bill of Rights—older than our political parties, older than our school system." 381 U.S. at 485–486, 85 S.Ct. at 1682.

Subsequently, another court wrote:

"Griswold (supra) and related cases establish that matters pertaining to procreation, as well as to marriage, the family, and sex are surrounded by a zone of privacy which protects activities concerning such matters from unjustified governmental intrusion." Doe v. Scott, 321 F.Supp. 1385, 1389–1390 (N.D.Ill.), appeal docketed sub nom. Hanrahan v. Doe, 39 U.S.L.W. 3438 (U.S. Mar. 29, 1971) (No. 70–105, 1971 Term).

The appellant cites a statement of former Supreme Court Justice Tom C. Clark:

"The result of (Griswold and related cases) is the evolution of the concept that there is a certain zone of individual privacy which is protected by the Constitution. Unless the State has a compelling subordinating interest that outweighs the individual rights of human beings, it may not interfere with a per-

son's marriage, home, children, and day-to-day living habits. This is one of the most fundamental concepts that the Founding Fathers had in mind when they drafted the Constitution." Clark, Religion, Morality, and Abortion: A Constitutional Appraisal, 2 Loyola Univ. (La.) L.Rev. 1, 8 (1969).[1]

■ Appellant contends that any pregnant woman seeking an abortion operates within a constitutionally protected zone of privacy and that the State of Texas has no compelling interest to justify intruding into this zone of privacy by prohibiting all abortions except those procured for the purpose of saving the life of the mother. Without determining whether or not seeking an abortion is operating within a constitutionally protected zone of privacy, we do hold that the State of Texas has a compelling interest to protect fetal life.

The difference between preventing conception and terminating a pregnancy when conception has already occurred should be apparent to all. Something, albeit sub-microscopic, exists which did not exist before and has at least the potential of human life which may or may not be realized. The State of Texas is committed to preserving the lives of its citizens so that no citizen "shall be deprived of life, * * * except by the due course of the law of the land." Texas Constitution, Article 1, Section 19, Vernon's Ann.St. Article 1191, V.A.P.C., is designed to protect fetal life, see Mayberry v. State, 160 Tex.Cr.R. 432, 271 S.W.2d 635, and this justifies prohibiting termination of the life of the fetus or embryo except for the purpose of saving the life of the mother.

The "meaning of 'human being' is a relative one which depends on the purpose for which the term is being defined." Rosen v. Louisiana State Board of Medical Examiners, 318 F.Supp. 1217, 1232 (E.D.La. 1970), appeal docketed, 39 U.S.L.W. 3302 (U.S. Dec. 27, 1970) (No. 1010). "Wheth-

1. It should be noted that this conception was not during a marriage between the

two. Wall was married to another woman.

er the fetus is or is not a human being is a matter of definition, not fact, and we can define it any way we wish." Hardin, Abortion or Compulsory Pregnancy, 30 J. Mar. & Fam. No. 2 (May, 1968). At least the present stage of medical science is of no real help in determining clearly when human life begins.

"The medical profession is far from agreeing on the time at which the fetus becomes a human life. Some physicians argue that abortion should be permitted with impunity at any time up to the sixth month of pregnancy since prior to that time the fetus is no more than a growing plant. On the other hand, many eminent physicians believe that the fertilized ovum has human life from the time of conception." Clark, Religion, Morality, and Abortion: A Constitutional Appraisal, supra, at 5. (Footnotes omitted)

In the homicide statute the Texas Legislature has manifested its intent to protect that human life in existence by actual birth. Article 1205, V.A.P.C. This is an implicit recognition of human life not in existence by actual birth. The State attempts to protect that human life not in existence by actual birth through its abortion statutes and defines this as the "life of the fetus or embryo." Article 1191, V.A.P.C. Whether there is need to re-examine and re-define human life in the light of modern medical and scientific knowledge and modern mores as well as for other more practical and humane reasons is a decision which the Texas Legislature, not this Court, must make. At the same time nothing warrants our holding the present definition to be unreasonable, arbitrary or capricious. In Doe v. Scott, 321 F.Supp. 1385, at 1395, Judge Campbell said in his dissent:

"Assuming *arguendo* that fetal life is human life, can there be any question but that the State of Illinois has a sufficient legislative interest in its protection? And, in view of the varied opinions in medical science, is not the determination of when human life commences better left to the legislature, rather than the courts? This was the conclusion reached by Mr. Justice Clark in the above quoted article (Clark, Religion, Morality, and Abortion: A Constitutional Appraisal, supra)."

We are of the opinion that Judge Campbell's reasoning is correct in this matter, and we adopt it.

In United States v. Vuitch, supra, the Supreme Court of the United States considered the statute of the District of Columbia which provided, in part:

"Whoever, by means of any instrument, medicine, drug or other means whatever, procures or produces or attempts to procure or produce an abortion or miscarriage on any woman, unless the same were done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine, shall be imprisoned in the penitentiary not less than one year or not more than ten years; * * *"

The district judge in that case dismissed the indictment on the ground that the statute was unconstitutionally vague because:

"1. The fact that once an abortion was proved a physician 'is presumed guilty and remains so unless a jury can be persuaded that his acts were necessary for the preservation of the woman's life or health.'

"2. The presence of the 'ambivalent and uncertain word health.'"

The trial court concluded that the statute placed the burden of persuasion on a defendant once the fact of an abortion had been proved and relied upon Williams v. United States, 78 U.S.App.D.C. 147, 138 F.2d 81 (1943), where the Court of Appeals for the District of Columbia held that the prosecution was not required to prove as a part of its case in chief that the operation was not necessary to preserve life or health.

The Supreme Court rejected that interpretation and stated, "Certainly a statute that outlawed only a limited category of abortions but 'presumed' guilt whenever the mere fact of abortion was established, would be the very least present serious constitutional problems under this Court's previous decision interpreting the Fifth Amendment. * * *" 402 U.S. at 70, 91 S.Ct. at 1298.

The Court also noted that the statute did not outlaw all abortions but only those that were not necessary to preserve the mother's *life* or *health*. The Court stated:

"It is a general guide to the interpretation of criminal statutes that when an exception is incorporated in the enacting clause of a statute, the burden is on the prosecution to plead and prove that the defendant is not within the exception. * * *"

And,

"It would be highly anomalous for a legislature to authorize abortions necessary for life or health and then to demand that a doctor, upon pain of one to ten years imprisonment, bear the burden of proving that an abortion be performed fell within that category." Id.

After holding that the burden of proof was upon the prosecution under the District of Columbia Code to plead and prove that an abortion was not " * * * necessary for the preservation of the mother's life or health," the Court then held that the word "health" is not so imprecise or uncertain in its meaning that it fails to inform a defendant of the charge against him and that it did not offend the Due Process Clause of the Constitution. While explicitly holding that "health" was not vague, the Court by implication upheld the nonvagueness of "life" since the entire statute was under attack as being vague.

The Court noted that the arguments based on Griswold v. Connecticut, supra, did not control.

The Court did not follow Roe v. Wade, 314 F.Supp. 1217, prob.juris. postponed, 402 U.S. 941, 91 S.Ct. 1610, 29 L.Ed.2d 108 (1971), where a three-judge federal court held our Texas abortion statutes to be unconstitutional. Roe v. Wade was relied upon by Mr. Justice Douglas in his dissent.

 Our Texas statute which permits an abortion to "save the life of the mother" is more definite than the District of Columbia statute upheld in Vuitch, and we hold that it is not vague and indefinite or overbroad.[2]

The first, second and third grounds of error are overruled.

The record contains no reversible error. The judgment is affirmed.

MORRISON, J., concurs in the affirmance of this conviction since appellant's defense was alibi and that alone.

---

2. The Texas statutory scheme outlawing abortions is different from that of the District of Columbia where only a limited category of abortions is outlawed and the exception is incorporated in the enacting clause. Article 1191, supra, outlaws all abortions and Article 1196, supra, provides an exemption where it is done under medical advice to "save the life of the mother."

Still the Vuitch case may give rise to the question even under our statutory scheme as to who has the burden of proof on the exemption. Previously we have held the exemption may be used as an affirmative defense in a proper case. Veevers v. State, 172 Tex.Cr.R. 172, 354 S. W.2d 161.

Since the appellant in the present case denied performing any abortion by claiming only an alibi defense the issue is not before us.